# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA,
### WESTERN DIVISION

IN RE:

DELMAR M. COLEMAN,                                    BK 01-70473-CMS-13

     DEBTOR.


CONSUMER PORTFOLIO SERVICES,                          AP 04-70048-CMS
INC.,

     PLAINTIFF,

vs.

DELMAR M. COLEMAN,

     DEFENDANT.

DELMAR M. COLEMAN,                                    AP 04-70049-CMS
     PLAINTIFF,

vs.

CONSUMER PORTFOLIO SERVICES,
INC.,

     DEFENDANT.

## MEMORANDUM OF DECISION

    This matter was before the court on debtor Delmar M. Coleman's (Coleman's) state lawsuit (AP 04-70049) removed to this Bankruptcy Court by creditor Consumer Portfolio Services, Inc. (CPS); and on CPS' own adversary proceeding (AP 04-70048) asking the court to enjoin Coleman from prosecuting the suit in any court. After considering the facts in the context of applicable law, the court finds that Coleman's 2001 confirmation order/2004 discharge order presents a res judicata bar to relitigation of all issues raised by Coleman in AP 04-70049.

1

Plaintiff Coleman's summary judgment motion in AP 04-70049 (Doc. 54) must be **DENIED;** and Defendant CPS' objection to that motion (Doc. 62) must be **SUSTAINED.** The court finds AP 04-70049 must also be **DISMISSED**, as precluded on the merits, under the court's sua sponte powers under 11 U.S.C. § 105(a). For these reasons, as requested by CPS in AP 04-70048, an injunction will be issued barring Coleman's pursuit of this litigation before this or other courts. Therefore, Plaintiff CPS' summary judgment motion in AP 04-70048 (Doc. 17) is due to be **GRANTED**; and Defendant Coleman's motion (Doc. 56) is due be **DENIED.**

## FINDING OF FACTS

Adversary Proceeding 04-70049 was commenced by plaintiff Delmar M. Coleman (Coleman) as a state court action against defendant CPS, which the creditor removed to the Bankruptcy Court. Adversary Proceeding 04-70048 is a complaint CPS filed asking the Bankruptcy Court to enjoin Coleman, as defendant, from pursuing her claim for statutory damages under Alabama's Uniform Commercial Code in any court.

The facts leading up to these adversary proceedings are basically without dispute and are summarized as follows:

**February 15, 2001** - Coleman filed her Chapter 13 bankruptcy petition which was assigned case number BK 01-70473 (BK Doc. 1). Coleman scheduled CPS as a secured creditor on Schedule D of her petition, listing a 1994 Oldsmobile Cutlass, CPS's collateral, in her Schedule B. The proposed Chapter 13 plan she filed with her petition stated: "Debtor proposes to surrender the 1994 Oldsmobile Cutlass to CPS, Inc."

**April 26, 2001** - The court denied confirmation of Coleman's plan as originally proposed. (BK Doc.8/NIBS Doc. 6)[1]

---

[1] The United States Bankruptcy Court for the Northern District of Alabama converted from a paper to an electronic filing system as of June 30, 2004. Some older files still contain paper docket (NIBS) numbers, as well as their new electronic numbers. However, the paper documents are not accessible online by the court or the public, as the newer electronically

**May 1, 2001** - Coleman filed an amended plan, which again proposed "to surrender the 1994 Oldsmobile Cutlass to CPS, Inc." (BK Doc. 9/NIBS Doc. 7)

**No Later Than May 10, 2001** - CPS sold Coleman's car. While the exact date is not known, prior to May 10, 2001, CPS sent Coleman a notice of intent to sell the car, which is now the basis of the underlying removed action (AP 04-70049).

**June 4, 2001** - CPS filed an unsecured claim (Proof of Claim 33) for $6,586.20 in Coleman's bankruptcy. This claim was for the unsecured, deficiency balance of the indebtedness after sale of the collateral.

**June 5, 2001** - The court held a hearing on confirmation of Coleman's amended plan.

**June 12, 2001** - The court entered an order confirming Coleman's amended plan (BK Doc. 12, NIBS Doc. 10). The plan provided "debtor proposes to surrender collateral of 1994 Oldsmobile Cutlass to CPS, Inc., and the Court approves this proposal; CPS, Inc., is GRANTED relief from automatic stay to repossess or accept surrender and liquidate said collateral; further, said creditor is granted leave to file a deficiency claim upon liquidation of its collateral." As confirmed, the plan required Coleman to pay her unsecured creditors 12 percent of their debt, including CPS' $6,586.20 deficiency claim, over its 36-month term. The confirmation order further provided "the property of the estate shall not vest in the debtor until a discharge is granted under § 1328 or the case is dismissed."

**March 10, 2004** - The Chapter 13 trustee filed a certification that Coleman had completed all payments called for under the terms of her confirmed plan (BK Doc. 41).

**March 12, 2004** - Coleman's discharge order (BK Doc. 42) was entered, relieving the debtor of personal liability for the residual 88% of the prepetition unsecured debts provided for by her Chapter 13 plan.

**April-May, 2004** - Claude Burns, Coleman's bankruptcy attorney, stated in a subsequent affidavit (AP 04-70049, Doc. 48), filed June 6, 2006,[2] that a state court attorney contacted him in April or May of 2004 inquiring about bankruptcy cases Burns might have where CPS had filed deficiency claims. Coleman's case was in this category. She was introduced to the lawyer, who then represented her in the removed state court action. Burns, by this affidavit, and Coleman, by her affidavit (attachment to AP Doc. 54), asserted that this was the first time that she became aware that she might have a claim against CPS. CPS does not stipulate

_____

numbered documents are.

[2] For clarity and unless otherwise indicated, the court will generally reference the document numbers found in AP 04-70049, the removed lawsuit, if identical or almost identical pleadings are filed in both cases.

to the contents of these affidavits, or to the facts they asserted.

**June 1, 2004** - Chapter 13 Trustee C. David Cottingham was discharged as trustee of Coleman's case, and bankruptcy case 01-70473 was closed administratively. (BK Doc. 45).

**June 3, 2004** - Coleman, as a named plaintiff, filed a proposed class-action lawsuit in Tuscaloosa County Circuit Court alleging that the notification letter on her car's sale was deficient under Ala. Code § 7-9A-614 (part of Alabama's Uniform Commercial Code article on secured transactions). She claimed statutory damages for the deficiency under Section 7-9A-625. The allegedly defective notice was the letter CPS sent her prior to the May 10, 2001 sale of the car.

**July 2, 2004.** CPS then removed the state court lawsuit (AP Doc. 1) to this Bankruptcy Court pursuant to 28 U.S. § 1452, the special removal statute by which state cases can be brought into the federal court system when no other base for federal jurisdiction exists. CPS also filed AP 04-70048 (AP Doc. 1) asking the court to enjoin Coleman from pursuing the state law cause of action in any court.

On that same day, CPS also filed a motion styled **MOTION TO PERMIT FILING OF ADVERSARY PROCEEDING WITHOUT REOPENING BANKRUPTCY CASE OR, IN THE ALTERNATIVE, TO REOPEN BANKRUPTCY CASE** (BK Doc. 46) in Coleman's closed bankruptcy case, BK 01-70473-CMS-13.

Coleman, has consistently opposed the reopening of her bankruptcy case, and has requested remand of her UCC claim back to state court. The bankruptcy case remains closed, with motions to reopen and oppositions pending in BK 01-70473-CMS-13.

**August 13, 2004.** Plaintiff CPS filed this motion for summary judgment in AP 04-70048 (Doc. 17). No hearing was set on the motion at that point.

In an order entered September 20, 2004, this court initially remanded AP 04-70049 to state court; dismissed AP 04-70048; and held that the motion to reopen BK 01-70473 (Doc. 46), was moot. The ruling was based on the conclusion that, since neither Coleman's bankruptcy case nor her bankruptcy estate still existed, the Bankruptcy Court lacked subject matter jurisdiction under either 28 U.S.C. § 1334(a) or 28 U.S.C. § 1334(b). A single order, with copies filed in all three files, covered these issues.

4

On September 29, 2004, CPS timely filed a notice of appeal. On March 16, 2006, the United States District Court reversed and remanded the Bankruptcy Court's decisions "in these consolidated cases". The District Court held that 11 U.S.C. § 105(a) and 28 U.S.C. § 1334(b) provided sufficient statutory bases for this court to assume subject matter jurisdiction of all disputes and proceedings.

The District Court in its memorandum specifically asked the Bankruptcy Court to determine if the June 12, 2001 confirmation order was <u>res judicata</u> of the UCC improper notice issue:

> ... If the Bankruptcy Court finds that the Removed Case (AP 04-70049) is precluded by the Confirmation Order, the Bankruptcy Court has the power to issue such an injunction under an exception to the Anti-Injunction Act. This exception allows the court to enjoin proceedings (the relief sought in AP 04-70048) in a state court to "protect or effectuate its judgments. 28 U.S.C. § 2283; 11 U.S.C. § 105; ...

In other language, the District Court stated of the removed action AP 04-70049:

> All of these issues are tied to the Confirmation Order. The Bankruptcy Court, therefore, has jurisdiction over Ms. Coleman's Removed Case under 11 U.S.C. § 105(a) and 28 U.S.C. § 1334(b). ... Among the more critical questions are when did the cause arise, and if the suit is viable, to whom does it belong. These questions, among others, will determine the ultimate fate of the Removed Case.

> If the Bankruptcy Court finds that the Removed Case is precluded by the Confirmation Order then no claim may be brought in any court, and <u>the Bankruptcy Court has the jurisdiction to dismiss the Removed Case</u> and to issue an injunction barring it being brought in state court. If, however, the Bankruptcy Court finds that the Removed Case is not precluded by the Confirmation Order then the Bankruptcy Court must deal with the issue of remand. (emphasis added)

After the District Court's remand to this court, Coleman filed her motions for summary judgment in both APs 04-70048 (Doc. 56) and 04-70049 (Doc. 54), and asked the court to dismiss AP 04-70048. CPS subsequently filed objections to both motions (AP 04-70048 Doc. 66 and AP 04-70049 Doc. 62). CPS' five adjudicatory defenses pleaded in AP 04-70048 Doc. 17, and its supporting pleadings, included res judicata, judicial estoppel, equitable estoppel, the effect of 11

5

U.S.C. §1327(a), and waiver. The creditor also asked the court to enjoin Coleman from pursuing

the AP 04-70049 claim against it in any court.

The court held an August 30, 2006 hearing on these interrelated issues. No party offered any

testimony at the hearing. After the arguments of all who wished to be heard, the court took the

motions/oppositions under submission for a decision.

## CONCLUSIONS OF LAW

This court had jurisdiction of Delmar Coleman's main Chapter 13 bankruptcy case pursuant

to 28 U.S.C. § 1334(a). This court has jurisdiction of these two lawsuits pursuant to 11 U.S.C. §

105(a) and 28 U.S.C. § 1334(b) as directed by the District Court in AP Doc. 37. District Court

bankruptcy jurisdiction is referred to bankruptcy courts under 28 U.S.C. § 157(a) by the General

Order of Reference of the United States District Courts for the Northern District of Alabama, Signed

July 16, 1984, As Amended July 17, 1984.

In this case, Plaintiff CPS is a party moving for summary judgment in AP 04-70048; and the

non-moving (opposing) party to Plaintiff Coleman's motion in AP 04-70049. Coleman is a moving

party seeking summary judgment in both lawsuits, although she is also the non-moving party against

CPS' motion in AP 04-70048.

"Summary judgment is appropriate only when 'there is no genuine issue as to any material

fact and ... the moving party is entitled to a judgment as a matter of law.' Fed. R. Civ. P. 56(c)."See

Information Systems and Networks Corporation v. City of Atlanta, 281 F.3d 1220, 1224 (11th Cir.

2002). For purposes of Rule 56, a fact is material if it might affect the outcome of the case. See

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party also has the burden

of establishing that no genuine issue of fact exists, and that there is an absence of evidence to support

6

the non-movant's case.  Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986).

The court's role at summary judgment is not to weigh the merits of the evidence in the record, but to determine if the undisputed facts already decree that one party must prevail as a matter of law. See Anderson, 477 U.S. at 247-252. In doing so, the court must consider all reasonable inferences from the facts in the light most favorable to the non-moving party; and against the moving party. See Information Systems and Networks Corporation, 281 F.3d at 1224, citing Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). If the moving party meets its burden, the non-movant must then show a genuine dispute on any fact issue for which it will bear the burden of proof at trial. See Celotex Corporation, 477 U.S. at 324.

This court will address the two questions posed by the District Court in its memorandum and order: (1) when did the cause of action arise and to whom does it belong; and (2) whether the confirmation order barred Coleman's post-bankruptcy lawsuit.

CPS, the plaintiff in AP 04-70048,  is the movant on the summary judgment claim raising res judicata and other defenses to Coleman's complaint in AP 04-70049. Coleman, the defendant, is the non-moving party opposing summary judgment on the issue of claim preclusion.  The court finds that Coleman's claim is barred, not based on the June 12, 2001 confirmation order alone, but on completion of her payments and her subsequent discharge pursuant to 28 U.S.C. § 1328, as well.

## I.
## When did the cause of action arise and to whom does it belong?

Pursuant to the District Court's remand order, the court will examine when Coleman's cause of action arose and to whom it belongs.

February 15, 2001 Coleman filed her Chapter 13 bankruptcy petition, along with her

schedules of assets and liabilities. The filing of her petition created a bankruptcy estate.

11 U.S.C. § 1306 defines property of a Chapter 13 bankruptcy estate as follows:

(a) Property of the estate includes, in addition to the property specified in section 541 of this title–

(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and...

(b) Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.

Section 541 states that property of the estate is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case, wherever located and by whomever held.

Coleman's original plan, as filed with her schedules, proposed to surrender her automobile to CPS. CPS took possession of the automobile and as required by the Alabama Uniform Commercial Code (UCC) sent her a notice of the proposed sale. It is this notice which is the basis of the removed state court lawsuit at issue in this case. The exact date of the notice is not clear, but it was prior to May 10, 2001.

Pursuant to Section 1306(a)(1), any cause of action Coleman had against CPS arising out of this notice became property of the estate by May 10, 2001. Coleman, by her affidavit, stated that she was not aware that she had a claim against CPS until April or May of 2004. For the purposes of summary judgment the court will treat this statement as a fact. However, this does not mean that the claim did not become property of the estate no later than May 10, 2001.

June 12, 2001 an order was entered confirming Coleman's amended plan. 11 U.S.C. § 1327(b) provides "except as otherwise provided in the plan or the order confirming the plan, the

8

confirmation of a plan vests all the property of the estate in the debtor." Coleman's confirmation order provided that "the property of the estate shall not vest in the debtor until discharge is granted under Section 1328 or this case is dismissed."

In Telfair v. First Union Mortgage Corp., 216 F.3d 1333 (11th Cir. 2000), the Eleventh Circuit adopted the "estate transformation approach" in reading Section 1327 in conjunction with Section 1306. Under this approach, courts are to "read the two sections, 1306(a)(2) and 1327(b), to mean simply that while the filing of the petition for bankruptcy places all of the property of the debtor in the control of the bankruptcy court, the plan upon confirmation returns so much of that property to the debtor's control as is not necessary to the fulfillment of the plan." Id. at 1340 (quoting Black v. United States Postal Service (In re Heath), 115 F.3d 521, 524 (7th Cir. 1997)).

CPS cited Dionne v. Colvin (In re Moore), 312 B.R. 902 (Bankr. N.D. Ala. 2004) for the proposition that the claim has remained property of Coleman's bankruptcy estate. In Moore, the debtor had a prepetition action pending in state court, which was not disclosed in his bankruptcy schedules, and the confirmation order in his Chapter 13 case also expressly withheld the re-vesting of property of the estate in the debtor until discharge. Id. at 904. The court considered the tension between Sections 1306 and 1327 discussed in Telfair, to find that 1327(b) "works as a gap-filler for when the confirmation order or the plan does not treat this issue." Moore, 312 B.R. at 907-08:

> Consequently, when the confirmation order or bankruptcy plan vests the property of the estate in the debtor only upon closing or dismissal of the case, there is no tension between the statutes. This is the situation in this case.

Because the confirmation order explicitly treated the issue of when property of the estate re-vested in the debtor, Moore is distinguishable from Telfair and the estate transformation approach did not apply. Therefore, under the Moore court's analysis, Coleman's cause of action would

9

remain property of the estate after confirmation. Telfair's transformation rule would not apply to any estate assets in the Coleman case at confirmation.

Coleman did complete all payments called for under her plan and a discharge was entered March 12, 2004. It is clear that all assets disclosed by Coleman in her bankruptcy schedules did revest in her as of March 12, 2004 as provided by terms of the confirmation order. It is not as clear what happened to ownership of never-disclosed estate assets at discharge, whether the debtor was aware of them or not.

Section 554(d) provides "unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate." Section 554 is applicable to Chapter 13 cases as well as Chapter 7 liquidation and Chapter 11 reorganization cases. Case law is clear that property not scheduled is not abandoned and remains property of the estate in Chapter 7 liquidation cases. See Bank of Lafayette v. Baudoin (In re Baudoin), 981 F.2d 736 (5th Cir. 1993).

Section 1327(b) provides that confirmation of the plan vests all of the property of the estate in the debtor unless the order of confirmation provided otherwise. The order of confirmation in Coleman's case delayed vesting until discharge, but did not change the fact of vesting. However, Section 554(d) also provides that unscheduled property remains property of the estate unless the court orders otherwise. Unless the confirmation order and Section 1327 could be interpreted to apply to known and unknown property, then the unlisted cause of action remains property of the estate even after discharge.

The Moore court found that pursuant to Section 554(d), since the prepetition cause of action was never scheduled that it remained property of the Chapter 7 estate. The court pointed out that

Case 04-70048-CMS    Doc 70    Filed 05/24/07    Entered 05/24/07 15:42:35    Desc Main
Document    Page 10 of 23

once the prepetition cause of action became property of the estate, the trustee was the real party in interest, that only the trustee could bring the action, and that no action by the debtor could alter the trustee's right to do so. See Reynolds v. Wendy's International, Inc. (In re Parker), 365 F.3d 1268, 1272 (11th Cir. 2004).

The bankruptcy court in EconoLube N' Tune, Inc. v. Frausto (In re Frausto), 259 B.R. 201 (Bankr. N.D. Ala. 2000) reached a different conclusion, but based on very different facts. Debtor Frausto had also failed to list a prepetition cause of action. His plan was confirmed providing that Chapter 13 payments would be from future earnings over a 60-month term of the plan.

Post-confirmation, the debtor amended his schedules and listed the prepetition cause of action. His Chapter 13 trustee pursued the debtor's prepetition claim in state court and recovered $100,000.00 for the Chapter 13 estate as a result of the settlement and compromise approved by the bankruptcy court.

 A postpetition creditor sought to attach these proceeds arguing that they were not property of the estate. The bankruptcy court agreed and found that under the Telfair estate transformation approach that only property necessary for the execution of the plan remained property of the debtor's bankruptcy estate. The plan as confirmed only provided for payments from postpetition earnings, not from other sources, including the lawsuit. The court therefore found that the $100,000.00 lawsuit proceeds were not property of the estate. However, unlike the Moore case, the debtor prior to discharge had amended his schedules to list the lawsuit before his discharge; and the trustee, not the debtor, had prosecuted the lawsuit.

To interpret Section 1327(b) to mean that undisclosed property revests in a Chapter 13 debtor at discharge would have the effect of making Section 554(d) inapplicable in Chapter 13 cases. This

11

is not what Congress chose to say in the statutes.  This court finds that this postpetition cause of action, if it is not barred,  remained property of the estate when the case was closed.  Pursuant to Parker, Coleman has no standing to prosecute this action. Her trustee has been discharged and her bankruptcy estate no longer exists.

However, this court need not reach the issue of where, when and if the cause of action can be prosecuted since the claim has been extinguished by the Coleman bankruptcy process.

## II.

### The second issue is whether or not Coleman is precluded from bringing her claim against CPS.

Under the legal doctrine of res judicata, also known as claim preclusion, a final judgment on the merits bars the parties to the prior action from relitigating a claim that was, or could have been, raised in the first action. Federal rules apply when the prior judgment came under federal law. See CSX Transportation, Inc. v. Brotherhood of Maintenance of Way Employees, 327 F.3d 1309, 1316 (11th Cir. 2003).

The doctrine has been rather narrowly defined by the Eleventh Circuit Court of Appeals generally, as well as in proceedings before bankruptcy courts. The court addressed res judicata in the context of a Chapter 11 confirmation order in Kaiser Aerospace and Electronics Corporation v.Teledyne Industries, Inc. ( In re Piper Aircraft Corporation), 244 F.3d 1289, 1296 (11th Cir. 2001), cert. denied, 534 U.S. 827 (2001):

> In the Eleventh Circuit, a party seeking to invoke the doctrine must establish its propriety by satisfying four initial elements: (1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action.

12

If a court finds the proponent has met this burden, it must decide whether the new claim was, or could have been, raised in the first action. As stated in Wallis v. Justice Oaks II, LTD. (In re Justice Oaks II, LTD.) 898 F.2d 1544, 1552 (11th Cir. 1990), cert. denied, 498 U.S. 959 (1990):

> When all of the requirements of claim preclusion are satisfied, "the judgment or decree upon the merits in the first case is an absolute bar to the subsequent action or suit between the same parties ... not only in respect of every matter which was actually offered and received to sustain the demand, but also as to every [claim] which might have been presented." Baltimore S.S., 274 U.S. at 319, 47 S.Ct. At 602. Thus, to determine whether the Wallises are now precluded from litigating the claims advanced in their adversary proceeding, we must establish whether any or all of those claims were actually made, or could have been made, in their objection to confirmation. ... (emphasis added)

See also Eastman Kodak Company v. Atlanta Retail, Inc. (In re Atlanta Retail, Inc.) 456 F. 3d 1277, 1284-85 (11th Cir. 2006), cert. den'd, 127 S.Ct. 836 (2006); and Universal American Mortgage Company v. Bateman (In re Bateman), 331 F.3d 821, 830 (11th Cir. 2003) (a Chapter 13 case). The end result in these cases varied based on their individual facts and procedural postures.

### III.

### Coleman's confirmation/discharge is a res judicata bar to her post-bankruptcy suit against the creditor.

In the Coleman case, there was no challenge to this Bankruptcy Court's jurisdiction to enter Coleman's confirmation order, or to enter the order discharging her. So there is no dispute that the "court of competent jurisdiction" element of res judicata is satisfied. Likewise, the parties to the two actions are also identical – Coleman and creditor CPS – satisfying the second of the four elements.

Whether a confirmation order is "a final judgment on the merits" can be more complicated in a Chapter 13 bankruptcy, than it usually is in Chapter 11. 11 U.S.C. § 1141(d) generally provides that a Chapter 11 debtor receives a discharge upon confirmation of the plan. 11 U.S.C. § 1328

13

provides that the Chapter 13 debtor does not receive a discharge until he has completed all payments called for under the terms of the plan. Section 1329(a)(1) provides that "any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, ..." Section 1329(b)(2) provides that the plan as modified becomes the plan. Under the facts of this case, Coleman did complete all payments called for under the terms of her plan and therefore the confirmed plan is no longer subject to modification. She then received her discharge.

In the Chapter 11 context, the Eleventh Circuit has stated:

This issue has been settled for some time: a bankruptcy court's order confirming a plan of reorganization is given the same effect as any district court's final judgment on the merits.

See Justice Oaks, 898 F.2d at 1550.

11 U.S.C. § 1322(b)[3] allows a Chapter 13 debtor to propose a plan which modifies the contractual rights of prepetition creditors. As stated in In re Richardson, 283 B.R. 783, 800 (Bankr. D. Kan. 2002), potentially in Chapter 13:

... Confirmation of the plan is the court's approval of a **new contract** with the debtor's prepetition creditors limiting them to recovery of the remaining property of the estate – the debtor's projected disposable income designated by the plan for payment to prepetition creditors and any tangible property committed to the plan.

---

[3] **11 U.S.C. § 1322(b)(2),** in particular, provides**:**

(b) Subject to subsections (a) and ( c) of this section, the plan may –

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims; ...

14

The new contract is binding on both parties.  Section 1327(a)[4] provides:

> The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

But this binding effect of the confirmation order is subject to the possibility of the plan being modified pursuant to Section 1329 as noted above, or the case being dismissed.  11 U.S.C. Section 349 provides that when a case is dismissed the parties are restored to the status they held prior to the bankruptcy case being filed.  As one early case described the process:

> ... Like any contract, this one (the confirmation order) embodies bilateral covenants and considerations. Those pertinent to the debtor's status are simply summarized: in return for the completed performance of a promise to make payments pursuant to the plan, the debtor receives the permanent benefit of an adjustment of pre-petition obligations, discharge of debts and various ancillary remedies. .... [T]his contract really has to await the debtor's full performance before the benefit of any of his statutory remedies may become final, binding, and fully effectuated on the public record.

> ... In the event of such a dismissal (under Section 1307(b)), 11 U.S.C. § 349(b) restores the

---

[4] 11 U.S.C. § 1327 provides the following:

**Effect of confirmation**
(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

As noted in the facts and authorized by Section 1327(b), Coleman's plan provided that estate property would <u>not</u> revest in her until either dismissal of the case, or her discharge.

Case 04-70048-CMS    Doc 70    Filed 05/24/07    Entered 05/24/07 15:42:35    Desc Main
Document      Page 15 of 23

full pre-petition status quo as to the debtor's property rights, and his creditors' competing claims against them. These provisions answer the question of whether a debtor's effort in Chapter 13 has any final, binding effect on creditors' rights if the debtor leaves bankruptcy before full performance under his plan. They certainly mean that a Chapter 13 case cannot bring about any permanent reordering of property and contract rights, partial or comprehensive, until the debtor meets a threshold requirement: entitlement to a discharge by "complet[ing] ... all payments under the plan" pursuant to 11 U.S.C. § 1328(a).

See In re Scheierl, 176 B.R. 498, 504 (Bankr. D. Minn. 1995). See also Baldwin v. Citigroup, Inc., et al. (In re Baldwin), 307 B.R. 251, 262 (M.D. Ala. 2004); and In re McCollum, 348 B.R. 377, 392 (Bankr. E.D. La. 2006), aff'd by 20076 WL 625938 (E.D. La. 2007).

Pursuant to the terms of the debtor's plan CPS took possession of her automobile and sold it. Under the terms of the contract between the debtor and CPS, there was a deficiency balance as a result of the sale and CPS filed a claim for this deficiency balance in the amount of $6,586.20. The confirmation order provided that unsecured claims, including CPS' deficiency claim, would be paid 12% of value. 11 U.S.C. § 502(a) provides that a proof of claim filed by a creditor is deemed allowed unless a party in interest objects. However, 11 U.S.C. § 502(j) also provides that a claim which has been allowed or disallowed may be reconsidered for cause. CPS's claim for the deficiency balance after the sale of their collateral was not objected to by Coleman and no request was made to reconsider the claim prior to her discharge and the case being closed.

Because Coleman completed all payments required by terms of her plan, and the discharge has been entered, the confirmed plan can no longer be modified. The relations it decreed constitute a final judgment on the merits as required by Justice Oaks.

The last requirement for application of res judicata is that both cases involve the same causes of action. As stated by the Eleventh Circuit in Justice Oaks, 898 F.2d at 1551:

Claims are part of the same cause of action when they arise out of the same transaction or series of transactions.

16

Prior to the filing of Coleman's bankruptcy petition she had entered into a contract with CPS to finance the purchase of her automobile and pledged her automobile as collateral. Pursuant to 11 U.S.C. § 1325(a)(5)(C) the debtor proposed to surrender the property securing CPS' claim. CPS, exercising its contractual rights as allowed under Alabama's Uniform Commercial Code (UCC), took possession of the automobile, sold it, and filed a claim in Coleman's case for the $6,586.20 balance due under the terms of its prepetition contract. The parties' rights and obligations under the terms of this prepetition contract are governed by Alabama's UCC. Coleman's state court lawsuit arises out of the notice that CPS sent her prior to the sale of her automobile as required under Alabama's UCC.

Coleman's plan granted CPS the right to take possession of its collateral and sell the collateral. CPS' post petition sale of the automobile is required to be in conformity with Alabama's Uniform Commercial Code. The UCC also includes the requirement that Coleman (and other borrowers) be given notice of such sales. The sale resulted in the deficiency claim filed by CPS in Coleman's case, which she did not object to, and which was paid at 12% under the terms of her Chapter 13 plan.

Coleman's post-bankruptcy, June 3, 2004, state court lawsuit is also a contract action under the same state UCC. She was asking a second court to determine the rights and liabilities of the parties under the same original contract. The record showed that Coleman's suit alleged that the notice she received in 2001 of CPS' impending sale of her auto was defective under Ala. Code § 7-9A-614 of the Uniform Commercial Code, entitling her to statutory damages under Section 7-9A-625. This is the notice of the same sale that resulted in CPS' deficiency claim. So the state suit again seeks a determination of the original contract rights and liabilities of the parties under UCC; and of

17

the preemptive impact the Bankruptcy Code had on those rights and liabilities.

Section 7-9A-614[5] is a relatively new UCC section that replaced the former <u>Ala. Code</u> § 7-9-504(3)[6] when the new article took effect January 1, 2002. As yet, there is no published Alabama

---

[5] Section 7-9A-614(1) states the following:

In a consumer-goods transaction, the following rules apply:

(1) A notification of disposition must provide the following information:

    (A) the information specified in Section 7-9A-613(1);

    (B) a description of any liability for a deficiency of the person to which the notification is sent;

    ( C) a telephone number from which the amount that must be paid to the secured party to redeem the collateral under Section 7-9A-623 is available; and

    (D) a telephone number or mailing address from which additional information concerning the disposition and the obligation secured is available.

Section 7-9A-614(2) provides that no particular phrasing is required for the information. However, Section 7-9A-614(3) provides a detailed fill-in-the-blank form which, when completed, "provides sufficient information" as required by Section 7-9A-614(1).

[6] The former Section 7-9-504(3) provided the following in much more general terms:

(3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms be commercially reasonable. <u>Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor;</u> ... (emphasis added)

appellate court case law interpreting Sections 7-9A-614 and/or 7-9A-625[7]. However, state courts previously interpreted suits arising under Section 7-9-504, along with other UCC complaints, as being contract actions. See Weaver v. American National Bank, 452 So. 2d 469, 473 (Ala. 1984):

> The requirements of § 7-9-504(3) are imposed by law upon every secured transaction covered by Article 9 of the U.C.C.; Ala. Code (1983 Supp.), § 7-9-501(3). By statute, they become terms of the security agreement. Breach of the notice requirement is breach of the contract. Therefore, the action under § 7-9-507(1) for damages for violation of these requirements is, in essence, a suit for breach of contract. The applicable statute of limitations is § 6-2-34(9). The actions contained in the first two counts were brought within one and a half years of the sale of the collateral, well within the six-year period of limitations, and are not time barred. (emphasis added)

See also Shapex Corporation v. United States, 629 F.Supp. 751, 752 (M.D. Ala. 1985).

Under Alabama law, Coleman's notice rights under the UCC became part of the terms of the original contract between the debtor and CPS. It is the same contract under which this court and the confirmation process determined CPS' $6,586.20 deficiency claim.

As stated by the Eleventh Circuit in Justice Oaks, 898 F.2d at 1551:

> Claims are part of the same cause of action when they arise out of the same transaction or series of transactions.

Both claims, CPS' UCC deficiency claim; and Coleman's state court UCC claim, arise out of the same contract and the same series of transactions. Consequently, the fourth element required for application of the doctrine of res judicata is present here.

---

[7] Section 7-9A- 625(b) provides the following:

*Damages for noncompliance.* Subject to subsections ( c), (d), and (f), a person is liable for damages in the amount of any loss caused by a failure to comply with this article. Loss caused by failure to comply may include loss resulting from the debtor's inability to obtain, or increased costs of, alternative financing.

Since all four elements have been met, the court must next determine whether the claim in the second suit could have been raised prior to finalization of the confirmation order. It is this court's view that it could, and should, have been raised before the confirmation process and the debtor's discharge permanently liquidated the parties' rights and liabilities under the state law contract.

As a general rule, an action for breach of contract comes into existence, or "arises", at the time the breach occurs, the same time it "accrues" triggering the six-year statute of limitations. See Stephens v. Creel. 429 So. 2d 278 (Ala. 1983) (considering a breach of construction warranty complaint as a subset of a breach of contract action). A contract action does not arise at the entry of the agreement, or when damages result, or when the plaintiff discovers the breach. Stephens, 429 So. 2d. at 282.

The breach of contract Coleman alleges in her suit occurred postpetition, but preconfirmation, and no later than May 10, 2001 when Coleman had received the allegedly defective notice. Pursuant to 11 U.S.C. § 1306(a)(1), this postpetition cause of action then became property of the bankruptcy estate. Yet she raised no objection to the amount of CPS' unsecured deficiency claim before confirmation. At the June 12, 2001 confirmation, the court held that after the state law sale of the car, Coleman still owed CPS $6,586.20 under Alabama law.

She never attempted to modify her plan to take the statutory claim now raised in AP 04-70049 into account following confirmation and before her discharge. She did not challenge the amount of CPS's deficiency claim at any time during the pendency of her case. Coleman is now asserting that she can recover 100% of CPS's potential liability to her, after paying CPS 12% of her liability to them.

The debtor and her counsel both state they were unaware that they had a specific statutory

cause of action until after her discharge. The court accepts those statements as true, as required on

a summary judgment motion. But a lack of knowledge that a cause of action might be available does

not prevent the operation of <u>res judicata</u> in a contract action where all material facts were in hand

prior to the first judgment.

> As stated in <u>Baldwin v. Citigroup, Inc.</u> (<u>In re Baldwin</u>), 307 B.R. 251, 266 (M.D. Ala. 2004):

> Actual knowledge of a potential claim, however, is not a requirement for res judicata to bar
> a subsequent action. <u>Johnson v. SCA Disposal Services of New England, Inc.</u>, 931 F.2d 970,
> 977 n. 20 (1st Cir. 1991) (noting that "a party's actual knowledge of a potential claim is not
> necessary for claim preclusion purposes."); <u>First Union Commer. Corp. Vs. Nelson, Mullins,
> Riley & Scarbrough,</u> (<u>In re Varat Enterprises, Inc</u>)., 81 F.3d 1310, 1316 (4th Cir. 1996). Thus
> "for purposes of res judicata, it is not necessary to ask if the plaintiff knew of his present
> claim at the time of the former judgment, for it is the existence of the present claim, not party
> awareness of it, that controls." <u>Harnett v. Billman</u>, 800 F.2d 1308, 1313 (4th Cir. 1986). An
> exception, however, exists to the general principle that lack of knowledge will not prevent
> the application of res judicata. This exception "is found in cases where fraud, concealment,
> or misrepresentation have caused the plaintiff to fail to include a claim in a former action."
> <u>Harnett v. Billman</u>, 800 F.2d 1308, 1313 (4th Cir. 1986) ...

The written notice is what it is. Coleman has made no allegation that CPS hid the notice,

defrauded her, or otherwise concealed the notice, or the sale from her. The debtor, represented by

counsel then and now, was in possession of all the facts needed to make her case no later than May

10, 2001. If the issue had been raised, the Bankruptcy Court could also have determined if the notice

complied with applicable UCC requirements before discharge finalized the amount of CPS'

deficiency claim. After March 12, 2004, when Coleman's discharge replaced the original contract

with the bankruptcy court novation, the issue could no longer be raised at all, in this or any other

court.

Consequently, the doctrine of <u>res judicata</u> must be applied to preclude Coleman's contract

claim in the second litigation. It is now too late for either party to relitigate rights and liabilities

under a contract that ceased to exist with entry of the discharge order.

As of the discharge, CPS could no longer enforce collection of 100 % of the debt Coleman owed under state contract law. The same confirmation/discharge process has also barred Coleman from claiming UCC statutory damages under a novation allowing her to pay CPS and other creditors 12 % of her state law liability.

## IV.

### The court will use its Section 105(a) powers to dismiss Coleman's claim in AP 04-70049, since res judicata bars its prosecution.

CPS' formal complaint in AP 04-70048, the suit in which it asked for summary judgment on the res judicata issue, actually asked the court to issue an injunction against Coleman under 28 U.S.C. § 2283 barring her prosecution of the AP 04-70049 removed claim in this or any other court. 28 U.S.C. § 2283 provides the following:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

The anti-injunction act exception authorizing a court to issue an injunction "to protect or effectuate its judgment" has been referred to as the "relitigation exception". "An injunction under the relitigation exception is appropriate where the state law claims would be precluded by the doctrine of res judicata." Burr & Forman, et al. v. Blair, et al., 470 F.3d 1019, 1030 (11th Cir 2006).

The court must find that Coleman's claim against CPS is barred by res judicata on CPS' summary judgment motion in AP 04-70048. This requires that Coleman's own motions for summary judgment in both APs 04-70048 and 04-70049 be denied. The court therefore finds that Coleman should be enjoined from prosecuting this action in any court.

22

Further, the court having found that Coleman has no standing to bring this action and is barred by <u>res judicata</u>, finds that AP 04-70049 is due to be dismissed.

## CONCLUSION

Judgment must be entered **IN FAVOR OF CPS** on grounds that the debtor's new state law claim is barred by the doctrine of <u>res judicata</u>; and **AGAINST COLEMAN,** on their cross-motions for summary judgment in AP 04-70048. Coleman's motion for summary judgment in AP 04-70049 must be also be **DENIED**; and CPS' objections to summary judgment in AP 04-70049, **SUSTAINED**. Based on the <u>res judicata</u> finding, the court will also **DISMISS** Coleman's complaint in AP 04-70049 under 11 U.S.C. § 105(a).

The Bankruptcy Court emphasizes that these holdings are strictly limited to specific Delmar M. Coleman/CPS facts. Orders, consistent with these findings pursuant to Fed. R. Bankr. P. 7052, will be entered separately in both adversary cases and in the main bankruptcy case (denying CPS' motion to reopen).

**DONE and ORDERED** this May 24, 2007.

<u>/s/ C. Michael Stilson</u>
C. Michael Stilson
United States Bankruptcy Judge

23